3-26CV3186-O

page 1# July 11 29th / 2000 2026

IN the United States of America of United States of Northern District Ceptial Court of Dallas Texas 75242-1310 Main Street 1100# Dallas TX 75229

U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS FILED SEP 15 2026 CLERK, U.S. DISTRICT COURT

Date July Wensday 29th, 2026

now comes Plaintiffs Rolland Alexander Knight Clause# 909780 Actionable August 18th 2025 to July 29th, 2000, year 2026 of Title 28 42 USC 28USA Entitle 1983

Statement of Claim Stoping and Traffaic U.P.S. Mail and Endtrading UPS and Federal Mail and Organized Crime With Address 4830 Paladore Lane Dallas TX 75232-0713

Statement of Violation First Admendment protection of Law and Equal treatment of protection of Law

3-26CV3186-O

7/29/2020. 2026 2 page# Wendy

Statement Stopping Federal Mail OBstruction of justice Organized crime and Conspiracy With the Address #1822 young Street Dallas TX 75207 and Address 4030 Paladino lane Dallas TX 75232 With U.S. Mail Permit # 4846 Holland Alexander Wright Address 1690 Mail K Malcolm South Blvd Dallas Texas 75226 - The Stewpot 2020 of File Suit in the Amount Violation of Amendment Constitutional 1st, 4th 6th 5th 14th Protection of Law Commercial Security 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 Protection of Health care and of Insurance of Civil Liberties Claim Protected Bug Bill 1866 protection of Civil Rights Surmary claims in the Amount Sue Civity Claims Equal Rights of Law of Civil Liberity In the Amount $750. 0000000







Page #3











Rolland Alexander Wright

7/29/2000/2026 $350.00

Wendsday 29th, 2026 Pay in the Amount Dollar

7/29/2026 Bank Account # 20226761

of 5 to 299 years of penalty of Sign Sigture

of Imprisonment of Confinement of penalty 6

to 399 years of All Capital Offenses of 1967,

1976, of Sign Sigture of Bank Account # and

Thumb print of Cigna Health Care of

Texas I.D.C. # 27045 1095 Sign Date

Wendsday July 7/29th/2000, 2026

Rolland Alexander Wright

Month Weekly #7/21/2026

7th July, 21st, 2000, year, 2026

other. If you find yourself in this position, you may need some help figuring out what to do. This is a good time to consult with an employment lawyer.

## Basic Compliance Tools

page 1 #

This book will help you understand which federal employment laws your company must follow and what those laws mean. However, to stay out of legal trouble, your company must do more than simply follow the letter of the law. It will also have to adopt some practical strategies to make sure that it meets its legal obligations. These compliance tools are not strictly "required" by the laws covered in this book, but a company that wants to avoid legal problems should consider them standard operating procedures.

This section briefly explains a handful of basic strategies every company should follow, but it is only an introduction to these important topics. The ins and outs of creating an effective compliance program are well beyond the scope of this book. However, SHRM and Nolo both have plenty of detailed resources that will help you design and implement procedures for compliance; see "If You Need More Information," below.

### Lawyers

License #909780

Even the most conscientious HR professional occasionally needs help from a lawyer. Although you can handle many employment issues on your own, some are particularly tricky and require some legal expertise. As you read this book, you'll see that we sometimes advise you to see a lawyer if you need more information on a difficult topic. And with good reason: Although lawyers don't come cheap, your company can save money by paying a lawyer for advice and information that would be very time-consuming and difficult to research on your own.

There are no hard and fast rules determining when you should consult with a lawyer. You'll have to decide when it's time to get some expert help based on a number of factors, including your own comfort level, how important the issue is, how many employees are affected, whether your company is facing significant legal exposure, and your company's budget. However, a good general rule is to consider consulting a lawyer sooner rather than later in any potentially difficult situation.

SSA # 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

Rolland Alexander Wright

S.U.M. University

Cigna Health Care of Texas I.N.C. ID#

0/2 85 percentages Advantages 770456095

7/2/2000, 2024 Colleges Scholar

Month tuesday #7/21/2000/year 2026

1904560 95 #10

Page # 2nd Cigna Healthcare Texas INC.

Rolland Alexander Wright

Contract



July #7/22/2000, year 2026

You can use a lawyer for a variety of tasks, including:

- **Document drafting or review.** A lawyer can create or troubleshoot documents you use over and over again, such as employment contracts, employee notice forms, waivers, your employee handbook, and other written policies.
- **Advice on employment decisions.** Of course, your company would quickly go out of business if it consulted a lawyer every time an employee was hired or disciplined, but there are times when a lawyer's advice will be very valuable. If, for example, you are considering firing a worker who is on FMLA leave or has recently complained of sexual harassment, a lawyer can help you make sure that you have adequate legal support for your decision.
- **Help understanding your legal obligations.** As noted above, companies must follow whichever law—federal, state, or local—provides the most benefits for workers. A lawyer can help you untangle these obligations and assist you in figuring out your responsibilities when several laws overlap.
- **Representation in legal or administrative proceedings.** If an employee files a complaint with an administrative agency or a lawsuit, your company should consult with a lawyer right away. Good legal advice at the outset can make the difference between winning and losing the case.

Clause #

#909780

T.D.C.J.

## Training

Training is a great way to keep your company's legal exposure to a minimum—and give your company an opportunity to deal with potential problems early on, before they have a chance to escalate. Training is a vital component of a company's efforts to combat harassment and discrimination, for example. In this type of training, employees learn about harassment and discrimination and about how to report possible misconduct to the appropriate people. Managers should also be trained to recognize harassment and discrimination and take appropriate action if they learn that harassment or discrimination might be taking place. You can learn more about discrimination and harassment training from the Training Institute of the Equal Employment Opportunity Commission, www.eeotraining.eeoc.gov.

88 # 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

DOC #3

tueday July Month Tis, Day 21st. year 2000, 2026

As a legal matter, training can help limit your company's liability if it faces a harassment lawsuit. Companies that take reasonable care to prevent and correct harassment—through adopting an antiharassment policy, training managers in their responsibilities, investigating complaints effectively, and taking swift action if harassment occurs—have a potential legal defense to certain harassment claims.

You can also use training to help your company maintain a safe and healthy workplace (a requirement of the OSH Act). In fact, the OSH Act requires companies in certain industries to provide specific types of training to their employees. Safety training might include information on how to use particular tools or equipment, ergonomics, working with hazardous materials, and reporting possible unsafe conditions. You can learn more about safety training from OSHA's Directorate of Training and Education Training Resources, www.osha.gov/dte. 7/21/2000, 2026 tueday 21st

## Policies

T.D.C.J. # 909780

Your company's written policies or employee handbook can make or break your efforts to comply with the law and can help limit your company's legal exposure. By clearly communicating what it expects from its employees and managers, a company can nip certain legal problems in the bud—or at least give itself an opportunity to resolve problems when they first arise. If everyone at your company understands, for example, what retaliation is and that the company will not tolerate it, managers will be less likely to retaliate against employees who raise concerns or complaints, and employees will be more likely to report retaliation right away, before their relationship with the company has been damaged beyond repair.

When writing or updating your company's policies, you must choose your words with care: At the most basic level, your company's policies must not contradict what the law requires or allows. For example, if your company's employee handbook says that employees may take only four weeks off per calendar year, strict enforcement of that policy could well violate several federal employment laws, including the Family and Medical Leave Act, the Uniformed Services Employment and Reemployment Rights Act, the Pregnancy Discrimination Act, and the Americans with Disabilities Act. If your company's policies lead employees to believe that they aren't entitled to the rights provided by these laws, the company could face major legal problems.

Rolland Alexander Knight

Cigna Health Care of Texas INC #

ID 11045609 5

SSA # 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

Th Folly tuesday 21st. year 2000. 2026



page 44

As you'll learn in later chapters, a company's policies sometimes also determine its legal responsibilities to employees. In some situations, a company may take certain actions only if its policies provide for it, even though the actions are otherwise legally allowed. For example, a company is legally allowed to pay less than the minimum wage to employees who earn tips (known as taking a "tip credit") under the Fair Labor Standards Act, but only if the company clearly informs employees that it will do so. To take full advantage of its legal rights, your company must make sure that its policies meet these standards.

Some policies can also be used as a legal defense to claims of harassment and discrimination. As noted above under "Training," companies that have antiharassment and antidiscrimination policies and take quick action to investigate and resolve complaints may be able to avoid liability for certain harassment and discrimination claims. Every company should have written policies prohibiting harassment and discrimination and outlining the steps the company will take if an employee comes forward with a complaint.

Companies that don't have written policies, or don't review their policies periodically to make sure that they are legally valid and up to date, are placing themselves at legal risk.

## Responding to Legal Violations

SSA# 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

If you learn of a possible legal violation—for example, hazardous working conditions, discriminatory statements by a supervisor, or a manager's refusal to allow an eligible employee to take FMLA leave—you must take action right away. You may need to investigate the situation first, to find out what happened and who's responsible. Once you know that your company has a problem, however, you should step in quickly to resolve it.

There are many very good reasons for taking action to correct legal violations. Perhaps most important, taking action will show employees that the company cares about their well-being and wants to do the right thing. This will help build the type of loyalty and positive feelings that can provide a strong deterrent to lawsuits. Putting a stop to illegal behavior will also limit an employee's damages, if he or she decides to take legal action against the company. And dealing quickly with troublemakers will send the strong message that your company doesn't tolerate misconduct, which will help prevent similar problems in the future.

T.D.C.J.

Rolland Alexander Wright #909780

Page #5 7th July Month, tuesday, 21, year 2,000, 2026

## Outsourcing

A few of the laws in this book—particularly those that deal with benefit plans, such as COBRA—can be difficult to understand and administer. That's why many companies hire outside service providers to handle their obligations under these laws. Outsourcing these responsibilities is a great way to maximize efficiency: Rather than spending weeks of your time trying to understand what these laws require, you can hire a company that specializes in compliance to take care of everything for you.

But use caution when hiring a third party to discharge your company's obligations. Generally, your company will remain legally liable for any actions taken by an outside provider (although the provider may have to indemnify your company—repay the costs it incurs—if your company is sued for the provider's actions). This is why you must choose service providers very carefully; create a clear, written agreement about what you expect the provider to do for your company; monitor the provider's performance; and periodically review your outside contracts to make sure that your company is getting what it pays for.

Among the factors your company should consider when hiring an outside service provider are:

- **The services to be provided.** Is your company looking to outsource its entire HR function or only the administration of its pension plan or benefits programs?
- **Performance benchmarks.** How will you measure whether the provider is meeting its obligations to your company?
- **Pricing.** What will your company pay, and how will the price be calculated (for example, per employee, per task, or a set monthly or annual rate)?
- **Control.** Does your company want to have some input on the tasks you are outsourcing, or will the provider be solely responsible for those issues?
- **Liability.** Does using an outside provider create additional obligations or legal exposure—as is true, for example, if you outsource certain obligations created by the Fair Credit Reporting Act? If an employee or applicant sues, will the provider indemnify your company?

-T.D.C.J.

Rolland Alexander Wright #909780

SSA# 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 1104 56095

Cigna Health Care of Texas INC. IO

7/27/2000, 2026 pg 64

## If You Need More Information

You may need more information than this book provides. You may have to figure out exactly how your company can comply with apparently conflicting federal, state, and local laws on the same topic. You may need help with the practical aspects of compliance, such as how to conduct an investigation of sexual harassment or develop an appropriate procedure for taking anonymous complaints of shareholder fraud under Sarbanes-Oxley. Or, you may need help developing employment contracts or an employee handbook. This section will direct you to some other resources that might help.

### Government Agencies

TDCJ #909780

Your first stop should be the federal or state agency that administers and enforces the law you're interested in. At the end of our discussion of each law, we give you a list of resources available from the federal agency that interprets and enforces the law. But these lists aren't exhaustive—some of these agencies have dozens of fact sheets, guidance memoranda, and special bulletins for employers and small businesses that can help you figure out the law's requirements. These agencies also have staff members available to help answer your questions or point you toward the information you need.

If your question involves state law, you can start your research by contacting the state agency that enforces the law. For questions about employment discrimination, contact your state fair employment practices agency. For other employment-related questions, contact your state labor department. Appendix A includes contact information for the federal agencies that enforce and interpret the laws covered in this book, as well as the fair employment practices agency and labor department of each of the 50 states and the District of Columbia.

### SHRM and Nolo Resources

The Society for Human Resource Management and Nolo both provide a number of resources on employment law, policies and procedures, and other issues of special interest to the HR profession. Both organizations have websites with lots of information on HR topics, and both offer written

Rolland Alexander Wright

Cigna Health Care of Texas

7:07 pm

T.D.C.J.
909780
Self
Representative
6 Admendment
#













Sign Sigture

Rolland Alexander Wright
SSA # 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

7th Month July Day 27th tuesday, year 2000, 2026
Pay In the of Legal Due Process Cluse of
Law of Bill 1866 protection of Law Civil Rights
of Color Authority Flag Ship Uniform of Title 18.42
U.S.C. 28 U.S.A. Entitle 1983 of Enforcement
Royalties of Court Fees of Legal Constitution Admend
ments of 1st, 4th 5th, 6th pay in the Amount
$870 .00 of penalty of Sign Sigture and thumb
print of 5 to 299 years of Confinement of Imprisonment
of Bank Account # 7022 67 6 61

page # 1

Tuesday

7th July 27, 2000, year 2026



SSA # 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

- **Handling problems.** How will you deal with disagreements or other problems in the company's relationship with the provider, and under what circumstances can either of you end the arrangement?

By carefully considering these issues up front, and getting some legal assistance in drafting and reviewing provider contracts, you can ensure that your company gets the most benefit from outsourcing administrative functions.

## Documentation

Rolland Alexander Wright

As you'll see, many of the laws we cover require companies to keep certain documents—for example, payroll records, job applications, or forms signed by employees. In addition to complying with these legal requirements, your company should carefully document in writing all important decisions and required actions relating to its employees. Even if this type of documentation is not specifically required by the law, it's the best way to prove that you complied with the law, if necessary.

# 909780

TDCJ

For example, the Fair Credit Reporting Act requires covered employers to provide written notice and obtain an applicant's or employee's consent before requesting a consumer report on that person. Because the law doesn't specifically obligate employers to keep copies of these records, an employer is technically free to shred these documents. But what if the employee claims never to have consented to the report? If the employer saved these records, it would have a written consent signed by the employee. If not, it will have no written proof that it complied with the law.

Companies should also carefully document employment decisions. For example, when a manager fires, promotes, disciplines, gives a pay raise to, or transfers an employee, or otherwise changes an employee's status or situation, he or she should fully document the reasons for the action. This will help the company if the employee later complains that the action was taken for illegal reasons (for example, discrimination or retaliation). The manager will have an easier time remembering the details and explaining the basis for the decision. The company will have a contemporaneous record (that is, one made at the time of the decision) of what it did and why. And, ultimately, documents will help the company persuade a government agency, jury, or judge that it acted properly.

Cigna Health Care of Texas ID# 770456095

7/1/2024 Colleges Scholarship

July 4th 7/21/2026 page#2

## If You Need More Information

You may need more information than this book provides. You may have to figure out exactly how your company can comply with apparently conflicting federal, state, and local laws on the same topic. You may need help with the practical aspects of compliance, such as how to conduct an investigation of sexual harassment or develop an appropriate procedure for taking anonymous complaints of shareholder fraud under Sarbanes-Oxley. Or, you may need help developing employment contracts or an employee handbook. This section will direct you to some other resources that might help.

### Government Agencies

Your first stop should be the federal or state agency that administers and enforces the law you're interested in. At the end of our discussion of each law, we give you a list of resources available from the federal agency that interprets and enforces the law. But these lists aren't exhaustive—some of these agencies have dozens of fact sheets, guidance memoranda, and special bulletins for employers and small businesses that can help you figure out the law's requirements. These agencies also have staff members available to help answer your questions or point you toward the information you need.

If your question involves state law, you can start your research by contacting the state agency that enforces the law. For questions about employment discrimination, contact your state fair employment practices agency. For other employment-related questions, contact your state labor department. Appendix A includes contact information for the federal agencies that enforce and interpret the laws covered in this book, as well as the fair employment practices agency and labor department of each of the 50 states and the District of Columbia.

### SHRM and Nolo Resources

#909780 TDCJ

The Society for Human Resource Management and Nolo both provide a number of resources on employment law, policies and procedures, and other issues of special interest to the HR profession. Both organizations have websites with lots of information on HR topics, and both offer written

Rolland Alexander Wright

SSA#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 1170156095

IOA

Cigna Health Care of Texas INC

page 3A



July # 7/21/2026

materials on a variety of subjects. If you need help with an HR question or issue, you should be able to find the answers in our products. See Appendix B for a list of resources you might find helpful.

**Get Updates and More Online**

When the information in this book changes, we'll post updates at this book's online companion page: **www.nolo.com/back-of-book/FEMP.html**
You'll find information there on evolving issues, such as health care reform, and developments in the field, like important Supreme Court cases or new regulations. You'll also find blogs, podcasts, and more.

Rolland Alexander Wright

SSA # 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



Cigna Health Care of Texas

INC. ID# 770456095



#909780 TDCJ

page 44 July th 7/21/2026

**Legal Developments**

- **Final regulations issued on disparate impact cases and defense.** In 2005, the Supreme Court ruled that an employee can bring a disparate impact case under the ADEA: a lawsuit alleging that the employer's seemingly neutral policy or practice had a disproportionately negative effect on older workers. (*Smith v. City of Jackson*, 544 U.S. 228.) Several years later, the Court found that an employer defending this type of case bears the burden of proving that the policy or practice creating the disparate impact was in fact based on a "reasonable factor other than age" (RFOA). (*Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84 (2008).) In 2012, the EEOC issued final regulations that provide a framework for these cases, including a list of considerations for courts trying to determine whether the employer's RFOA really was reasonable. These regulations are covered in this chapter.
- **Different rules apply in age discrimination mixed motive cases.** In *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343 (2009), the Supreme Court decided that an employee bringing an age discrimination case has to prove not only that age was a motivating factor in the employer's decision, but that it was the "but for" cause of the decision (that is, that the decision would not have been made if not for the employee's age). This standard is different than the one used for other types of discrimination. In Title VII cases, if the employee can show that a protected characteristic (such as race or national origin) was a motivating factor in the employer's decision, the burden of proof then shifts to the employer, who must prove that the same decision would have been made regardless.

## Covered Workers

#909780 T.D.C.J

The ADEA covers employees and applicants of regulated employers. However, not all employees and applicants are covered: The ADEA protects only those who are at least 40 years old. Unlike other antidiscrimination laws, the ADEA does not prohibit "reverse discrimination." Those who are younger than 40 have no rights under the law.



Although state government workers are protected by the ADEA, they do not have the right to sue their employers (the states for which they work) in

Rolland Alexander Wright

Cigna Healthcare of Texas

ID # 770456095

Page #5



7/21/2020 year 2026 Tuesday

court to enforce those rights; only the EEOC may sue a state to protect state employees from age discrimination.

The ADEA protects foreign nationals working for a covered employer, even if the employee is not authorized to work in the United States. Such an employee still has rights under the ADEA, although his or her available remedies may be limited. For example, although reinstatement is a common remedy for an unlawfully fired employee, a foreign national may not be reinstated to a job in the United States if he or she is not authorized to work in the United States.

The ADEA also protects U.S. citizens working outside the United States for employers that are incorporated in the United States, based in the United States, or controlled by a U.S. employer.

# 909780 T.D.C.J.

**Did You Know ...** SSA # 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

- Experts estimate that more than half of the workforce were at least 40 years old—and, therefore, covered by the ADEA—by 2010.
- In 2010 and 2011, almost one-quarter of all of the age discrimination charges filed with the EEOC included an age discrimination claim. More than 23,000 age discrimination charges were filed in each of these years, continuing the significant jump that began with the economic crisis in 2008.
- An AARP survey, conducted in May 2012, found that more than a third of older respondents had experienced, or knew someone who had experienced, age discrimination in the workplace. Almost two-thirds of respondents believed that those who were at least 50 years old faced discrimination at work. And, 16% of the retirees surveyed said they might have to return to work for financial reasons.

ID 770456095 Rolland Alexander Knight

## What's Prohibited

The ADEA prohibits age discrimination against applicants and employees who are at least 40 years old. The ADEA applies to all aspects of employment, including:

Cigna Healthcare of Texas I.N.C.

page 6th

- hiring
- firing
- compensation
- benefits
- job assignments and transfers
- employee classifications
- promotions
- layoffs and recalls
- training and apprenticeship programs
- retirement plans, and
- time off.

The ADEA also prohibits employers from retaliating against employees who complain of age discrimination or otherwise assert their rights under the law. (For more information, see "Retaliation," below.)

## Key Facts

- The ADEA protects workers who are at least 40 years old from age discrimination. It does not apply or provide any rights to workers who are younger than 40, and it does not prohibit an employer from favoring older workers, even if some of the younger workers who are not favored have already reached the age of 40.
- There are several explicit exceptions for firefighters, law enforcement officers, and certain types of executives and policy makers. In addition, an employer may discriminate based on age if it can prove that age is a bona fide occupational qualification for the job.
- Although the ADEA prohibits neutral policies and practices that have a disproportionate negative impact on older workers, different rules apply to these "disparate impact" lawsuits under the ADEA than under other civil rights laws, including Title VII of the Civil Rights Act of 1964. (See Chapter 18 for more on Title VII.)

T.D.C.J.
#909,789
Rallord Alexander Wright

Cigna Healthcare of Texas INC
ID# 110456095

tuesday

July 7/27/2026 page #17th



**Discrimination**

Among the practices that might constitute age discrimination under the ADEA are:

- requiring workers to retire once they reach a certain age
- treating older workers worse than younger workers by, for example, targeting them for layoffs or discipline
- giving younger workers higher pay, more favorable assignments, or more responsibilities than older workers because of age, and
- making decisions based on stereotypes about older people (for example, refusing to include older workers in training programs because of a belief that they are unwilling or unable to learn new things).

The ADEA's prohibitions apply even if the "younger" workers who receive better treatment are older than 40. For instance, an employer who treats a 60-year-old worker more favorably than a 70-year-old worker because of age has violated the ADEA, even though both workers are protected from age discrimination under the law.

The ADEA also prohibits employers from adopting facially neutral policies or practices that have a disproportionately negative effect on older workers. These "disparate impact" claims often come up in layoff cases, if a significant number of the employees who lose their jobs are older than 40.

The ADEA gives employers a defense to disparate impact claims: An employer can escape liability if it can prove that the policy or practice that caused the disparate impact was based on a reasonable factor other than age (RFOA). In 2008, the Supreme Court decided that the RFOA is an affirmative defense, which means the employer must prove it at trial. But this left open the question of exactly what qualifies as an RFOA, including which factors are "reasonable" for an employer to consider when making job decisions and how much responsibility an employer has to try to reduce the negative impact on older workers.

In 2012, the EEOC issued final regulations that attempt to answer these questions. Among other things, the regulations define an RFOA as a "non-age" factor that is objectively reasonable when viewed from the position of a prudent employer mindful of its obligations under the ADEA. The employer must show both that the employment practice it used was reasonably designed to achieve a legitimate business purpose, and that the employer applied the factor in a way that reasonably achieves that purpose.

88A# 248335
6830
T.D.C.J
#909780

Rolland Alexander Wright

July # 7/27/2000, 2026

"reverse" seniority system that benefits workers with less seniority or penalizes workers with more seniority does not qualify as a bona fide seniority system under the ADEA.

Page 8 #

### Bona Fide Occupational Qualification

An employer may discriminate on the basis of age in filling a particular job if age is a *bona fide occupational qualification (BFOQ)* for the position—that is, if the job, by its very nature, must be filled by an employee of a particular age. In age discrimination cases, the BFOQ defense comes up most often in the context of age limits, when an employer refuses to hire anyone older than a certain age for certain positions.

An employer may use the BFOQ defense only if the age limit or other age-related policy is reasonably necessary to the essence of the employer's business and either of the following is true:

- All or substantially all people who are older than the age limit would be unable to perform the job.
- Some people who are older than the age limit would be unable to perform the job and testing each person individually to determine whether he or she can perform the job would be impossible or highly impractical for the employer.

If the employer's goal in using the BFOQ is public safety, the employer must also show not only that the challenged age limit achieves that goal, but also that there is no acceptable alternative that is less discriminatory.

### Bona Fide Employee Benefit Plan

In some cases, an employer may reduce benefits paid to older workers if the employer acts in accordance with a *bona fide employee benefit plan*. This exception is discussed in detail in Chapter 13, which covers the Older Workers Benefit Protection Act.

### Firefighters and Law Enforcement Officers

State and local governments may institute a mandatory retirement age of 55 or older for firefighters and law enforcement officers.

Rolland Alexander Wright
#909780 TDCJ
SSA#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

Cigna Health Care of Texas INC.
ID# 770456095

July 4/7/29/2000, 2026

Page #9

### Bona Fide Executives and High Policy Makers

Employers may require a high-ranking employee to retire or step down to a lesser position if all of the following conditions are met:

- The employee is at least 65 years old.
- The employee has worked for at least the previous two years as a *bona fide executive* or in a *high policy-making position*.
- The employee is entitled to an immediate, nonforfeitable annual retirement benefit of at least $44,000 from the employer. A benefit is immediate if payments start (or could have started, at the employee's election) within 60 days of the effective date of the employee's retirement. A benefit is nonforfeitable if no plan provisions could cause payments to cease. For example, if the plan requires payments to be suspended if the employee files a lawsuit, that benefit would be forfeitable. In calculating whether a benefit pays at least $44,000 annually, employers may not count Social Security contributions, employee contributions, contributions of former employers, or rollover contributions.

88A#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

## How the ADEA Is Enforced

Rolland Alexander Wright

### Individual Complaints

Employees may file a complaint (also called a charge) of age discrimination with the EEOC. The deadlines for filing a charge depend on whether the state where the discrimination charge will be filed also has an antidiscrimination law. In states without antidiscrimination laws, an employee has 180 days from the date of the discriminatory act to complain. In states that have their own laws prohibiting age discrimination, this deadline is extended to 300 days. (You can find a list of states with antidiscrimination laws, and information on what those laws prohibit, at the end of Chapter 18.)

T.D.C.J.
#909780

An employee may also file a lawsuit for age discrimination. However, the employee first must file a charge of discrimination with the EEOC and get a "right to sue" letter (see "Agency Enforcement," below). An employee must file the lawsuit within 90 days of receiving a right to sue letter from the EEOC.

ID# 170456095
Cigna Health Care of Texas INC.

Page # 90 7/21/2000. 2026

### Agency Enforcement

The federal agency responsible for investigating ADEA complaints is the EEOC. (See Appendix A for information on how to contact the EEOC.) An employee usually initiates the process by filing a charge (complaint) of age discrimination with the EEOC, although the agency can also act on its own initiative. The EEOC has the power to investigate, negotiate with employers, and bring lawsuits against employers to stop discriminatory practices.

## Complying With the ADEA

### Reporting Requirements

The ADEA imposes no reporting requirements.

### Posting Requirements

All regulated employers must post a notice regarding the ADEA. Employers must post this notice in a prominent location, where it can be easily seen and read by employees and job applicants. The EEOC has created a poster, *Equal Employment Is the Law*, which fulfills this requirement. You can order the poster in English, Spanish, or Chinese from the EEOC's website. (See "Agency Resources," below.)

### Record-Keeping Requirements

Employers must make and keep records for three years that contain the following information for each employee:

- name
- address
- date of birth
- occupation
- pay rate, and
- compensation earned each week.

Employers must keep any records relating to the following employment matters for one year after the action occurs:

Ralland Alexander Wright # TDCJ 909780

Cigna Health Care of Texas ID#
77045 6095

July 7/21/2026



page #11

- job applications, resumes, responses to job advertisements, inquiries about jobs, and any other records relating to the failure to hire any applicant
- promotion, demotion, transfer, selection for training, layoff, recall, or termination
- job orders submitted by the employer to an employment agency or labor organization to recruit applicants for job openings
- test papers completed by applicants for any position
- results of any physical examination considered by the employer in connection with any personnel action, and
- job notices or advertisements relating to job openings, promotions, training programs, or opportunities to work overtime.

Employers must also keep copies of any employment benefit plan and any written seniority system and merit system for one year beyond the date when the plan expires. If such a plan or system is not written, the employer must keep a memorandum fully outlining its terms and the manner in which it has been communicated to employees for the same time period.

## Penalties

Rolland Alexander Wright

If a court finds that an employer has violated the ADEA, the employer may be ordered to do any or all of the following:

- pay the employee all wages, benefits, and other forms of compensation lost as a result of the discrimination
- take action to remedy the results of the discrimination by, for example, reinstating or promoting the worker. If the court finds that such action is warranted but impractical (for example, if the employee's position has been eliminated or the work relationship is irrevocably poisoned), the court may require the employer to pay front pay—compensation for future earnings lost—instead.
- pay a penalty (called "liquidated damages"), equal to all of the wages, benefits, and other compensation owed the employee at the time of trial, if the employer knew that its conduct was illegal or showed reckless disregard as to whether its conduct violated the ADEA or
- pay the employee's court costs and attorneys' fees.

SSA 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

T.D.C.J. #487780

ID 17045095

Cigna Health care of Texas INC

## Agency Resources

7/21/2000. 2026

- The order form for the official notice employers must post regarding the ADEA:

  *Equal Employment Is the Law*
  *www.eeoc.gov/employers/poster.cfm*

- Information about the EEOC's charge-processing procedures:

  *The Charge Handling Process*
  *www.eeoc.gov/employers/process.cfm*

- Basic facts about the ADEA:

  *Facts About Age Discrimination*
  *www.eeoc.gov/facts/age.html*

## State Laws Relating to Age Discrimination

Most states have antidiscrimination laws, many of which prohibit age discrimination. Some states follow the ADEA's lead by prohibiting discrimination only against older workers. Other states prohibit all age discrimination—including discrimination against younger workers. To find out whether your state has an age discrimination law, consult the chart at the end of Chapter 18.



Rolland Alexander Wright
#909720 T.D.C.J.
Cigna Health Care of Texas
INC. ID# VT0456095

Rolland Alexander Wright
#7690 Malcolm X
Blvd Dallas Texas
75226 - Suite 707
the Stewpot UPS parcel

7/29/2026
Wendesday 29, 2000, 2026

In The United States of America
of Northern District of Dallas Tx
75242 - 1310 # Main Street, 1100 Commerce
of Federal Cimmal Court House Earl Cabell
Federal Building North Coalition of US
Supreme Court Judge of Title 18 42 USC
28 USA District Clerk Attorney Vicky park
Secretary of State District Attorney
Chief of Staff Security 20503
Donald J Trump 20500

RECEIVED SEP 15 2026 MAILROOM

X-RAY

FWD